Gayle M. PALSHOOK, et al., Plaintiffs,

v.

**Steve W. JARRETT, Jr.,
et al., Defendants.**

**No. 3:99CV7273.**

United States District Court,
N.D. Ohio,
Western Division.

Oct. 11, 2000.

Marc G. Williams–Young Spitler & Williams–Young, Toledo, OH, for Plaintiffs.

Kristen A. Connelly, Joan C. Szuberla, Spengler & Nathanson, Toledo, OH, Duane L. Galloway Pfefferle & Galloway, Sandusky, OH, Timothy C. James, Ritter, Robinson, McCready & James, Toledo, OH, for Defendants.

## ORDER

CARR, District Judge.

This is a civil rights case in which plaintiffs Palshook and Lopez allege they were subjected to unlawful treatment by Perkins Township Police officers and one Township resident. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and

1988 for alleged violations of their Fourth and Fourteenth Amendment rights under the United States Constitution, their Article I, § 14 rights under the Ohio Constitution, and various state law tort claims. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Pending are summary judgment motions of defendants Perkins Township and Police Chief McClung, Officers Jarrett, Andres, and Hollis, and the Township resident, Sausser. (Docs.53, 51, 57). For the following reasons, defendants Perkins Township's and Chief McClung's motion shall be granted, defendant Sausser's motion shall be granted, and the defendant Officers' motion shall be granted in part and denied in part.

## Background

There are many discrepancies among the parties' versions of the events giving rise to this action. For purposes of this motion, the facts considered are those where the parties are in agreement, and, where disputes exist, those alleged by plaintiffs.

Defendant Sausser owns and lives on a six-acre parcel of land, part of which she leases for commercial uses. (Sausser Dep. at 13). In April, 1998, Sausser leased a plot of this land to Cardinal Restaurants, Inc. (Cardinal). (Sausser Dep. at 28). Cardinal intended to build a new restaurant on the leased land. Before construction of the restaurant could begin an existing structure and other materials were to be demolished and removed by construction worker Carl Hudson. (Sausser Dep. at 43; Hudson Aff. at 4,5).

On Wednesday, May 13, 1998, Palshook stopped at the construction site and asked Hudson if she could have some of the bushes he was going to remove from the property. (Palshook Dep. at 104–5). Hudson told her she could come by later and get the bushes, and that the bushes would be available to anyone who wanted

them. (Palshook Dep. at 105; Hudson Aff. at ¶ 7). Plaintiffs later returned to the site, but the bushes were still in the ground. Hudson suggested plaintiffs return in the morning to get them. (Lopez Dep. at 46).

Plaintiffs returned to the site the next morning, Thursday, May 14. With the help of Hudson's brother, plaintiffs loaded the bushes into their trailer. (Lopez Dep. at 53, Palshook Dep. at 111). According to plaintiffs' version of events, they had an encounter with Sausser on Thursday, during which Sausser stated that plaintiffs were taking her bushes. Also, Sausser told plaintiffs that their van and trailer were blocking her rear driveway. (Lopez Dep. at 58; Palshook Dep. at 112). Plaintiffs allege they briefly discussed with Sausser that the ownership and control of the bushes and property were subject to Cardinal's lease. (Palshook Dep. at 112). Plaintiffs maintain that Sausser had relinquished her claim to the use and control of the property to Cardinal under the lease agreement.[1] (Sausser Dep. at 22).

On Friday, May 15, 1998, plaintiffs returned to the site to retrieve a tree that Hudson told Palshook plaintiffs could have. (Palshook Dep. at 126). Because plaintiffs could not lift the tree themselves, they agreed to wait for Hudson to help them. (Palshook Dep. at 129).

After a little more than half an hour passed, Sausser's son Joseph, who lives with Sausser, approached plaintiffs and told them he wanted them to leave. At the time, plaintiffs did not know who the man was. (*Id.* at 131). Joseph Sausser told plaintiffs if they did not leave he would call the police. Palshook responded, "go ahead and call the police." (*Id.* at 131, 133). Plaintiffs claim they wanted the police to come so that the matter could be resolved. (Lopez Dep. at 72).

1. Plaintiffs do not contest that Sausser had the right to use and control of her rear driveway.

Joseph Sausser called the Perkins Township Police Department. Officer Jarrett arrived at the scene. (Jarrett Dep. at 74, 76). The record, including Plaintiffs' statement of facts, is unclear as to exactly what transpired on Jarrett's arrival at the scene.[2] Regardless of who had rights to control the property, and regardless of whether Sausser or her son spoke to Jarrett when he arrived, Jarrett was investigating a trespass and possible theft complaint. His duties required him to question those persons present to determine what was going on.

A conversation took place among Jarrett, Joseph Sausser, plaintiffs, and possibly Sausser. Plaintiffs claim they attempted to tell their side of the story, but that during the conversation Sausser became very upset and signaled to the bulldozer operator to drop the tree plaintiffs wanted. (Lopez Dep. at 74). According to plaintiffs, the bulldozer operator dropped the tree and irreparably damaged it. Because the tree was damaged, plaintiffs state they had no reason to stay at the site; they walked to their van and got inside. (*Id.* at 75). As the matter was not resolved, Jarrett yelled after plaintiffs and asked Palshook what her name was. Palshook replied that Jarrett could get it from the van's license plate. Plaintiffs proceeded to leave. (Palshook Dep. at 138–9).

Because they were arguing between themselves, plaintiffs delayed pulling out of the driveway. Jarrett approached the van as the two were yelling and knocked on the driver's side window. Lopez yelled that the window didn't work. (Lopez Dep. at 79). While Jarrett was standing beside the window, Palshook was arguing with Lopez. She pushed her foot towards the gas pedal "like we gotta get going. Let's

go." (Palshook Dep. at 143). This motion caused Palshook to fall in between the captain's chairs in the van. (*Id.*). Palshook asserts she never reached for the wheel to drive the car, but she admits that she may have lunged to catch herself while falling and reached towards the gearshift. (*Id.* at 143–46). Jarrett's description of this activity is that Palshook "went from her seat to the middle of the van, put the vehicle in drive and stepped on the gas pedal." (Jarrett Dep. at 99).

Without trying to discover what Jarrett wanted, or giving him the information he had previously requested, plaintiffs drove off. Plaintiffs assert they thought Jarrett was knocking on the window to signal they should leave. Jarrett alleges he was holding onto the door handle when plaintiffs pulled away. Sausser asserts that she saw Jarrett "sort of jump" and lose his footing because he was leaning against the van when it pulled away. (Jarrett Dep. at 99; Sausser Dep. at 115–16). Plaintiffs claim that Jarrett was walking towards his car at the time they pulled away. (Palshook Dep. at 147).

Jarrett either followed plaintiffs to the driveway of their home, as plaintiffs claim, or stayed briefly at the scene and talked to Sausser, as Jarrett claims. (Lopez Dep. at 87; Jarrett Dep. at 107–8). In any event, before he later encountered plaintiffs at their home, Jarrett radioed his supervisor, defendant Sergeant Andres. The officers arranged a meeting place. (Jarrett Dep. at 109). The officers decided there was a sufficient basis for charges of obstructing official business and criminal trespass against the plaintiffs. (*Id.* at 118). The officers discussed what occurred when Jarrett approached the van and knocked on the window to talk to plaintiffs, and decid-

2. For example, Jarrett states he met Sausser immediately upon arriving outside the site and Sausser identified herself as the complainant. (Jarrett Dep. at 64). Plaintiffs assert they never *saw* Jarrett and Sausser speaking at this time. (Palshook Dep. at 134–5). Jarrett states that Sausser told him she wanted plaintiffs off the property and she didn't

care whether they took the bushes. (Jarrett Dep. at 71). While plaintiffs claim Sausser did not speak to Jarrett at this time, they allege Sausser was outside and took part in a discussion later. Sausser, however, claims that she never came outside and never spoke to plaintiffs or Jarrett. (Sausser Dep. at 98, 103).

ed there was also a "possibility of a charge of assault on a police officer." (*Id.*).

Jarrett arrived at plaintiffs' home and knocked at a door. Palshook motioned Jarrett around to the front of an attached garage, because plaintiffs use the garage door as their front door. (Palshook Dep. at 157). Palshook opened the door and went into the middle of the garage. Jarrett remained on the driveway outside the garage. (*Id.* at 159). Jarrett again asked Palshook to give her name so that he could make a report. Palshook refused to give her name. Jarrett told Palshook she would not get into trouble but that she may be charged with obstruction of justice. (Palshook Dep. 162). Jarrett said he would have to call his supervisor, and Palshook agreed that was a good idea. (*Id.* at 165). Palshook instructed Jarrett to use the bell at the garage door when the officers returned. (*Id.* at 165).

Jarrett and Andres returned together and rang the bell. Palshook opened the door and again went to the middle of the garage. (*Id.* at 167). Andres told Palshook he needed her name, social security number, and date of birth. (*Id.* at 169). Palshook told Andres her name was Mrs. Lopez, which is not her legal name, and "jokingly" told him she was an illegal alien. Palshook also requested the same information (name, social security number, and birth date) from Andres. (*Id.* at 169–71).

At this point, Andres stepped into the garage and Palshook retreated towards the door leading into the house. Lopez, who was inside the house, started to come into the garage and Palshook pushed him back inside the door and went into the living room herself. During this time, Palshook also told Andres to get out of her garage. (*Id.* at 178–9). Andres came to the inner door and Palshook eventually opened it. When Palshook opened the door Andres was on the threshold. Palshook contacted Andres' chest with the palm of her hand and he stumbled backwards off the step. (*Id.* at 182–83). The parties disagree as to whether Palshook purposefully shoved Andres or accidently touched him while motioning for him to stop, but it is undisputed that Palshook did contact Andres' chest and he stumbled.

Lopez came out to talk with Andres in an attempt to calm Andres down. Andres claims he informed Lopez that Palshook was now under arrest for assaulting a police officer and obstructing justice, and that Palshook would have to come out of the house. (Jarrett Dep. at 142; Andres Dep. at 176). Lopez alleges that during this conversation Andres threatened to break the door down to get Palshook if she refused to come out. Lopez went back into the house. (Lopez Dep. at 99).

A third officer, defendant Hollis, arrived at the scene and came to the door inside the garage. (Andres Dep. at 190, 192). Palshook decided to provide her driver's license and handed it out the door. According to defendants, Palshook handed the license to Hollis and when he turned to hand it to Andres, Palshook grabbed Hollis' arm. The officers claim Hollis tried to pull away from Palshook and she pulled him towards her. Plaintiffs claim Andres took the license and started to walk away with it while Palshook protested from within her living room. (Palshook Dep. at 190). According to plaintiffs, Hollis slipped past Palshook in the doorway and entered the living room. (Lopez Dep. at 103). Hollis asked Andres if Palshook was under arrest, and Andres replied that she was. (*Id.* at 104–5). Andres got his handcuffs out and approached Palshook, who reacted by knocking the handcuffs out of Andres' hands. (*Id.* at 106).

There is much dispute as to what happened next. According to plaintiffs, the officers made a "well-executed tackle" of Palshook, "led by Hollis and in clean up by Andres." (Lopez Dep. at 105). Lopez asserts that from the force of the tackle, Palshook went backwards and hit her head on the couch, sustaining a head injury and bruises on her arms. (*Id.* at 105, 114). Next, claim plaintiffs, Hollis grabbed one

of Palshook's arms, Andres grabbed the other, and Jarrett came in and grabbed her feet. (*Id.* at 108–9). Plaintiffs allege Palshook's asthma condition was affected by this episode, but it is undisputed that the officers allowed her to use her inhaler after they took her down. (Palshook Dep. at 200–01).

Defendants claim that Palshook resisted when they tried to take custody of her, and that Andres took Palshook to the ground with a balance displacement technique. (Hollis Dep. at 162, 164). The officers assert that Palshook was kicking at them. (Hollis Dep. at 168; Jarrett Dep. at 158). The officers claim that Jarrett grabbed Palshook's ankles so she would stop kicking them. (Jarrett Dep. at 159). Palshook does not deny kicking the officers.

Palshook was eventually escorted out of her house, led to a squad car, and taken to the Township police station. (Jarrett Dep. at 166). As Palshook was being led out, defendant Police Chief McClung arrived at the residence. McClung instructed the officers to contact the Prosecutor's Office for advice on filing charges against plaintiffs and to have Lopez follow the officers to the station. (McClung Dep. at 56).

At the station, Palshook was detained in an interview room rather than a holding cell. (Jarrett Dep. at 174). She waited there while Andres called Prosecutor Lynne King to discuss charges. (Andres Dep. at 227). After Andres described all the events that occurred with plaintiffs at the Sausser property, King advised Andres that there was probable cause to believe Palshook had committed the offenses of assault on a police officer and obstructing official business. She also believed there was probable cause to charge Lopez with the offenses of complicity to assault a police officer and obstructing official business. King advised Andres to charge plaintiffs accordingly. (King Aff. at ¶¶ 3–4).

After learning of the events at plaintiffs' home, King informed Andres that in her opinion there was probable cause to charge

Palshook with two more charges of assault on a police officer. (*Id.* at ¶¶ 5, 7). Also, the information about Palshook's behavior confirmed King's opinion that Palshook should be charged with obstruction. (*Id.* at ¶ 6). Finally, King told Andres that criminal trespass charges would be proper if Sausser wished to press them. King instructed Andres to contact Sausser and determine whether she wanted to press charges. (*Id.* at ¶ 8).

After the police were advised that Lopez should also be charged, he was placed under arrest. (Lopez Dep. at 120). Lopez was taken to a holding cell where he was seated on and cuffed to a bench. (*Id.*).

While plaintiffs were at the station, Jarrett went to Sausser's home. Jarrett read Sausser the charges and she signed the complaint. Sausser claims she did not understand that she was signing a criminal complaint, although she testified that she read the papers before signing them. (Sausser Dep. at 133). Jarrett did not administer an oath to Sausser at the time she signed the papers. (Jarrett Dep. at 237). Jarrett claims Sausser told him that she understood she was signing a complaint to bring criminal charges. (*Id.*)

Later in the evening, plaintiffs were taken to the County Jail and were booked. They were released on bond the next day.

## Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## Discussion

### Defendants Jarrett, Andres, and Hollis

Plaintiffs claim they were subjected to unlawful arrests. They make constitutional claims pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, and Article 1, § 14 of the Ohio Constitution. The constitutional claims are based on allegations of lack of probable cause, unlawful entry to their home, and excessive force. Plaintiffs also make common law claims of false arrest and imprisonment, malicious prosecution, and assault and battery. Defendants claim they are entitled to summary judgment on the merits of all charges, and, alternatively, are protected from liability by immunity.

■ To succeed on a cause of action under § 1983, plaintiffs must establish the following: 1) they were deprived of a right secured by the federal Constitution or the laws of the United States; 2) the depriva-

tion was caused by a person or people acting under color of state law; and 3) the deprivation occurred without due process of the law. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir.1994) (*citing Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir.1991)).

### A. Constitutional Claims

#### I. Warrantless Arrests

■ In general, a warrantless arrest does not violate Fourth Amendment protections when the arrest is based on probable cause. *United States v. Dotson*, 49 F.3d 227, 230 (6th Cir.1995) (*citing Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988)). There are additional factors to consider, however, when the warrantless arrest occurs inside an individual's home. The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, does not permit warrantless entry into a suspect's home for a routine felony arrest absent valid consent or exigent circumstances. *Payton v. New York*, 445 U.S. 573, at 576, 583, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Thus, even where probable cause exists, an arrest made in an individual's home is unlawful if exigent circumstances are not present and valid consent is not given for the entry.

#### 1. Probable Cause

■ Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge are "sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Ohio courts use the same rule. *State v. Ratcliff*, 95 Ohio App.3d 199, 205, 642 N.E.2d 31 (1994). Ohio courts have interpreted this definition to include the "totality" of facts and circumstances within a police officer's knowledge. *Id.* Because defendants entered plaintiffs' home to arrest Palshook, it is appropriate to determine whether probable cause to make a

warrantless arrest existed.[3] It is clear from the record that such probable cause did exist with respect to Palshook.

### a. *Felony Assault on Officer Jarrett*

Palshook was charged with felony assault on Officer Jarrett based on her behavior at the construction site. Ohio R.C. § 2903.13(A) provides: "No person shall knowingly cause or attempt to cause physical harm to another." Assault is normally a misdemeanor of the first degree, but it can be elevated to a felony of the fourth degree if the victim is a peace officer. *See* O.R.C. § 2903.13(C)(3).

■ Even accepting plaintiffs' version of events, there was probable cause to arrest Palshook for assault on Jarrett. It is undisputed that while Jarrett stood at the door of the van Palshook moved her foot towards the gas pedal and lunged in a manner such that Jarrett believed Palshook was reaching for the wheel and putting the van in gear to drive. A reasonable officer could conclude that such actions were an intentional effort to cause the officer physical harm. Palshook's hostile attitude reenforced Jarrett's reasonable belief that she intended to harm him.

### b. *Obstruction of Official Business*

Section 2921.31 of the Ohio Revised Code provides:

(A) No person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.

■ It is clear Jarrett had probable cause to arrest Palshook for obstruction of official business.[4] It is undisputed that while Jarrett was investigating a criminal complaint, plaintiffs walked away from Jarrett and got in their van. When Jarrett asked Palshook her name so that he could make his report she yelled at him to get it off the license plate. When Jarrett tried to talk to Lopez, Palshook yelled at Lopez to get in the van, which Lopez did. After Jarrett knocked on the window to talk to plaintiffs Palshook lunged such that Jarrett thought she was going to drive the van while he was standing next to it holding onto the door handle. Instead of talking to Jarrett plaintiffs told the officer the window did not work, continued yelling at each other, and eventually drove away.

Once Jarrett was at plaintiffs' house, Palshook gave him the false name of Mrs. Lopez and "jokingly" told him she was an illegal alien. Additionally, Palshook pushed Lopez back inside the house to prevent him from coming out to talk with Jarrett.

Plaintiffs assert that they were exercising their fundamental right to walk away from a police officer when they left the construction site. With this assertion,

---

**3.** Plaintiffs assert Fourth Amendment claims on behalf of both Palshook and Lopez. Plaintiffs' argument focuses only on the warrantless arrest, however. The record shows that Lopez was not arrested in the home. Rather, Lopez voluntarily followed defendants to the police station, and was later arrested at the police station. As discussed *infra*, defendants are entitled to summary judgment on Lopez's false arrest claim under state law. Because plaintiffs' Fourth Amendment claims are based on an alleged unlawful warrantless arrest in the home, and because Lopez was not arrested in the home, summary judgment in favor of defendants is appropriate on Lopez's Fourth Amendment claim.

**4.** It is noted, however, that because the offense is classified as a misdemeanor in the second degree punishable by not more than ninety days in jail and a fine of not more than $750, *see* O.R.C. §§ 2921.31, 2929.21, probable cause to arrest for this offense is not sufficient to invoke the exigent circumstances exception to the warrant requirement. *See United States v. Rohrig*, 98 F.3d 1506, 1517 (6th Cir.1996) ("Because the government's interest is necessarily less compelling in cases involving minor offenses, the gravity of the underlying offense is an important factor to be considered when determining whether any exigency exists.") (internal citations omitted).

plaintiffs disregard the fact that they were not involved in a consensual encounter with a police officer. Rather, the officer was investigating a criminal complaint, and at the time he attempted to question plaintiffs he had reasonable suspicion they were criminally trespassing and attempting to steal some bushes. In this situation, Jarrett was entitled to detain plaintiffs for investigatory purposes. *See generally Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968); *United States v. Dotson,* 49 F.3d 227, 230 (6th Cir.1995) (recognizing the distinction between an investigatory stop and a consensual encounter between citizens and a police officer).

Plaintiffs next assert that the mere fleeing from a *Terry* situation cannot amount to obstruction of official business. While this may be true, *see State v. McCullough,* 61 Ohio Misc.2d 607, 580 N.E.2d 1180 (1990), here plaintiffs did more than just leave during a *Terry* stop. Palshook's actions in the van gave Jarrett grounds to believe she was attempting to harm him. Additionally, Palshook yelled at Lopez to get into the van rather than to talk to Jarrett. At her home, Palshook gave false information and once again prevented Lopez from talking to the police. The series of affirmative acts by Palshook created a reasonable suspicion that the offense of obstruction of official business had occurred or was occurring. *See City of North Ridgeville v. Reichbaum,* 112 Ohio App.3d 79, 84–5, 677 N.E.2d 1245 (1996) (holding that when individuals were told of officer's need to investigate a complaint, "multiple acts" impeding investigation such as refusing to provide identification, refusing to cooperate, and shouting such that officer could not conduct a conversation sufficed to establish obstruction of official business).

Thus, probable cause existed to arrest Palshook for obstruction of official business.

**5.** Although probable cause to arrest existed, because the offense is a misdemeanor in the fourth degree, *see* O.R.C. § 2911.21, such

### c. *Criminal Trespass*

■ It is undisputed that Jarrett had probable cause to arrest Palshook for criminal trespass. When Jarrett arrived at the construction site after receiving the complaint, he had a reasonable suspicion plaintiffs were trespassing. When plaintiffs fled the site after Jarrett identified himself and his stated his purpose, the reasonable suspicion ripened into probable cause to arrest. *See Dotson,* 49 F.3d at 231.[5]

### d. *Felony Assault on Officer Andres*

■ There is no dispute that Palshook made contact with Andres' chest and Andres stumbled backwards from the step. Even if Palshook's assertion that she made the contact accidentally, or that Andres actually moved forward into her hand while attempting to enter the house is accepted as true, this does not change the fact that Jarrett observed the contact. Thus Jarrett had a reasonable suspicion that Palshook committed an assault on Andres. This is all that probable cause requires.

Plaintiffs argue that Andres was attempting to enter the house, and that Palshook raised her hand in an effort to stop him. Defendants respond by asserting that a person has no right to use any form of force to resist arrest by a police officer.

■ Ohio law provides that the Fourth Amendment gives an individual the right to refuse admission to a police officer attempting to make a warrantless entry. Individuals have "at least some limited right to resist entrance, such as locking or closing the door, or physically placing one's self in the officer's way." *City of Middleburg Heights v. Theiss,* 28 Ohio App.3d 1, 4, 501 N.E.2d 1226 (1985). The law does not expressly permit the use of force to resist entrance. Even if some use of force were permitted under Ohio law, probable cause is not enough to invoke the exigent circumstances exception to the warrant requirement.

there are no guidelines setting parameters for what force is privileged. As such, a reasonable police officer, after observing Palshook contact Andres and Andres stumble backwards off the steps, would have probable cause to believe an assault had occurred.[6]

### e. *Felony Assault on Officer Hollis*

Andres states that he observed Palshook grab Hollis by the arm after she handed Hollis her license. Such an observation would provide a reasonable officer with probable cause to believe the offense of assault on a police officer had been or was about to be committed. Plaintiffs allege Palshook did not make contact with Hollis. Thus, when the evidence is viewed in the light most favorable to plaintiffs, no probable cause to arrest for assault on Hollis existed. Lack of probable cause for this one charge, however, cannot negate the probable cause that otherwise existed for the warrantless arrest of Palshook. Even if there was no probable cause to arrest Palshook for the assault on Hollis, there was probable cause to arrest her for several other offenses. Thus, probable cause to arrest Palshook existed as a matter of law and defendants' summary judgment motion cannot be defeated by the existence of a genuine question whether there was probable cause for this one offense.

### f. *Resisting Arrest*

It is undisputed that Palshook flung the handcuffs out of Andres' hand as he attempted to arrest her. It is also undisputed that Palshook kicked at the other officers when they were attempting to gain physical control over her to arrest her.

Such conduct creates probable cause for the charge of resisting arrest.

Plaintiffs argue, however, that Palshook was privileged to resist arrest because the arrest was unlawful. Because there is an issue of material fact whether the entry was lawful, *see* discussion, *infra,* and because the evidence must be construed in the light most favorable to plaintiffs, I will assume for this analysis that the entry, and thus the arrest, were unlawful.

Section 2921.33(A) of the Ohio Revised Code provides: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another." The statute makes a lawful arrest a necessary element of the crime. *Hoover v. Garfield Heights Municipal Court,* 802 F.2d 168, 173 (6th Cir.1986). Because there can be no conviction for resisting arrest if the arrest itself is unlawful, there is presumably no probable cause for the offense. As discussed above with regard to the alleged assault on Hollis, however, the absence of probable cause here is not dispositive. Even absent probable cause to charge Palshook with resisting arrest, probable cause to arrest her still existed for other offenses.

Thus, probable cause to arrest Palshook existed as a matter of law, and the warrantless arrest is not unlawful based on a lack of probable cause.

### 2. *Consent*

Defendants claim that plaintiffs consented to defendants' entry into the garage, and that all subsequent actions within the house were also consensual.[7] It may be true that Palshook impliedly consented to

---

6. Additionally, even if Ohio law on the scope of permissible resistance were to be construed so as to preclude a finding of probable cause for assault on a police officer on these facts, the law was not sufficiently clear at the time so as to create a clearly established right to use force. Thus, even in the absence of probable cause, defendants' decision to arrest is protected by qualified immunity. The standards for qualified immunity are discussed fully in part B, *infra.*

7. Alternatively, defendants argue that plaintiffs had no expectation of privacy in the garage, and thus Fourth Amendment protections are not triggered by the defendants' entry. It is not necessary to reach this dispute. The arrest took place in the living room, not in the garage or even in the doorway. It is therefor irrelevant whether plaintiffs had an expectation of privacy in the garage.

defendants' entry into the garage. She instructed defendants to use the doorbell by the garage door, and opened the door for them when they arrived. But even if Palshook's initial consent is assumed, it is clear from the record that she withdrew her consent. Palshook yelled at the officers to get out of her garage, and she stood in the doorway to the living room in an attempt to prevent the officers from entering her home. Defendants ultimately entered plaintiffs' living room to effectuate the arrest of Palshook, and there is no evidence indicating consent for such an entry. Thus, there was no valid consent and defendants' summary judgment motion cannot be granted on this basis.

### 3. *Exigent Circumstances*

Defendants assert they are entitled to summary judgment because exigent circumstances allowed warrantless entry. Defendants base the claim upon the alleged assaults on Andres and Hollis by Palshook at the threshold to the living room. Defendants argue that once these assaults occurred the officers were justified in following Palshook into her living room.

Because plaintiffs allege Palshook never came into contact with Hollis, there is a genuine issue as to whether Palshook assaulted Hollis. Without knowing whether an assault occurred, I cannot determine whether such an assault created exigent circumstances excusing defendants' warrantless entry. "In a civil damages suit where material facts are in dispute, determining whether the government established the existence of exigent circumstances to excuse the warrant requirement is a question for the jury." *Smith v. Stone*, 2000 WL 687672 at *4 (6th Cir. May 19, 2000) (unpublished) (citing *Ingram v. City of Columbus*, 185 F.3d 579, 587 (6th Cir.1999); *O'Brien*, 23 F.3d at 998).

" 'Exigent circumstances', something of a term of art, denotes the existence of 'real immediate and serious consequences' that would certainly occur were a police officer to 'postpone [ ] action to get a warrant.' "

*O'Brien*, 23 F.3d at 997 (6th Cir.1994) (*quoting Welsh v. Wisconsin*, 466 U.S. 740, 751, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (internal citations omitted). The Sixth Circuit has found exigent circumstances to justify a warrantless arrest in the following three instances: "1) when the officers were in hot pursuit of a fleeing suspect; 2) when the suspect represented an immediate threat to the arresting officers or the public; and 3) when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals." *Jones v. Lewis*, 874 F.2d 1125, 1130 (6th Cir.1989). The record does not permit summary judgment for defendants based on any of these exceptions to the warrant requirement.

First, the record does not permit judgment for the defendants on the ground that they were in hot pursuit of a fleeing criminal. While there was probable cause to arrest plaintiffs, it is not clear that there was a need for speed in executing these arrests, and nothing suggests the officers could not have waited to obtain an arrest warrant. The record does not show that plaintiffs were fleeing from the officers. Rather than fleeing anywhere, plaintiffs were secure in their home. Plaintiffs' location was certain and there was no risk of flight. Nothing in the record suggests that some officers could not have remained outside the house, ensuring plaintiffs could not attempt to leave while another officer obtained a warrant.

Defendants argue that Palshook assaulted Andres on the threshold to her living room, and thus she cannot retreat into her home to prevent the officers from arresting her. Defendants rely on the Supreme Court's decision in *United States v. Santana* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) for support of this argument. Such reliance is misplaced for several reasons.

The facts of *Santana* are not analogous to the facts of this case. In *Santana*, police officers were told by an arrestee in

a drug transaction that Santana, the party alleging unlawful entry, had the money from the drug deal. *See* 427 U.S. at 40, 96 S.Ct. 2406. The officers immediately went to Santana's home, and when they arrived Santana was standing in her front doorway with a brown paper bag in her hand. *Id.* The officers got out of their van and yelled "police" and showed their identification. *Id.* As they approached Santana, she retreated into the vestibule of her house. *Id.* The police followed Santana into the house and arrested her.

The Court found that the warrantless entry into Santana's house was justified on the basis of hot pursuit. The Court found that because the officers attempted to make the arrest while Santana was in her doorway, they were justified in following her into the house when she ran away from them. The arrest of Santana in her doorway was proper without a warrant because the doorway was considered a public place. "She was not merely visible to the public but was completely exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* (*citing Hester v. United States,* 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898 (1924)). The warrantless entry in hot pursuit was appropriate not only because Santana retreated into her house after the police attempted to arrest her, but because it was likely that any delay would result in the destruction of evidence (the money and drugs that were in fact contained in the paper bag). *Id.* at 43, 96 S.Ct. 2406.

In the present case, plaintiffs had not voluntarily exposed themselves to public view before the arrest and entry took place. By the time Palshook came to the door for a third time after telling defendants to leave—when the apparent assault on Andres took place—Palshook had already withdrawn any implied consent for defendants to be in the garage, and she clearly was unwilling to have them in her home.[8] Despite the fact that their very

---

**8.** Defendants' claim that plaintiffs had no Fourth Amendment privacy interest in the garage does not help defendants in their hot pursuit argument. Even assuming plaintiffs had no such interest, there is still no valid doorway arrest or hot pursuit. Defendants assert that Palshook opened the door in response to their knocking, and because, in defendants' view, the living room door was the front door, or threshold, of the house, defendants were making a valid doorway arrest from which Palshook was not entitled to retreat. It cannot be successfully argued, however, that Palshook had exposed herself in a public place where she could lawfully be subject to a warrantless arrest. Palshook had made it clear to defendants that she did not consent to their being in her house, and she had gone into her home to avoid talking with them. Defendants had no right to enter the house at this point, and it was clear plaintiffs did not wish to admit them. Instead of leaving or calling for a warrant, defendants knocked at the living room door—their own testimony is that they knocked for over one minute. The record is void of any reason why defendants did not seek a warrant at this point, except perhaps because they were already at the house and wished to get the matter taken care of. This does not eliminate the need for a warrant. *See, e.g., United States v. Morgan,* 743 F.2d 1158, 1164 (6th Cir.1984) (stating that "police officers may not, in their zeal to arrest an individual, ignore the fourth amendment's warrant requirement merely because it is inconvenient") (*citing Johnson v. United States,* 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436 (1948)).

When Palshook finally opened the door it was due to frustration from the continued knocking by defendants. Plaintiffs assert that the officers threatened to break the door down if Palshook did not open it. A conclusion that Palshook voluntarily opened the door to speak to the officers or that she put herself in the public eye thus removing any expectation of privacy cannot follow from these facts. *See, e.g., United States v.Vaneaton,* 49 F.3d 1423, 1426 (9th Cir.1995) (stating "the warrantless arrest of a suspect who *voluntarily* opens the door of his dwelling in response to a *noncoercive* knock by the police" does not violate the Fourth Amendment. (emphasis added)). Under these facts defendants had no right to make a warrantless "doorway arrest" at the time Palshook opened the door. I cannot conclude from this record that Palshook's "push" after she opened the door amounted to exigent circumstances or a serious crime necessitating hot pursuit excusing the warrant requirement. Finally, plaintiffs' assertion that Hollis snuck in behind Palshook while she was in the door-

presence in the garage was unwelcome, if not unlawful, defendants maintain that they were justified in entering the house to arrest Palshook on the basis of hot pursuit after she committed the felony. Even assuming that the officers had probable cause to arrest Palshook for those offenses, it is not clear that the circumstances amounted to an exception of the warrant requirement. Here there was no risk of destruction of evidence as there was in *Santana.*

Next, with the dispute that exists about the assault on Andres, I cannot conclude that an immediate threat to an arresting officer or the public existed at any time during the interaction between plaintiffs and defendants. None of the officers were injured by Palshook's action, and there is no indication that plaintiffs tried to pursue the officers after the initial act of contacting, perhaps even pushing Andres on the steps. There is no evidence that plaintiffs posed any threat to the public. Thus, summary judgment cannot be entered for the defendants based on exigency due to danger to themselves or others.

Finally, as noted above, there was no evidence to be destroyed by plaintiffs. Also, there was virtually no risk that plaintiffs would try to escape, much less be successful in such an attempt. There were three police officers outside the house, and, as stated above, there is no evidence to suggest one or more officers could not have remained outside the house to prevent plaintiffs from leaving. Thus, defendants are not entitled to judgment based on possible loss of evidence or flight.

Other exigent circumstances cannot excuse defendants' entry. In addition to the three situations described above, the Sixth Circuit has indicated that some other factors should be taken into consideration when determining whether exigent circumstances existed. These include: 1) the gravity or violent nature of the offense

with which the subject is to be charged; 2) reasonable belief that the suspect is armed; 3) probable cause to believe the suspect committed the crime; 4) strong reason to believe the subject is in the premises being entered; and 5) likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public. *United States v. Jones,* 1990 U.S.App. LEXIS 2978, at *4 (6th Cir.1990) (*citing U.S. v. Standridge,* 810 F.2d 1034, 1037 (11th Cir.1987)).

Factor 5—the effect of delay—is contained in the three situations previously discussed, and, as previously discussed, does not result in a finding of exigent circumstances. Factor 1—the nature of the offense—also does not support a finding of exigent circumstances. Even though the assault was a felony, and thus not a "minor" crime [9], the record does not show that the assault was grave or violent.

Factors 3—probable cause—and 4—presence on the premises—do weigh in defendants' favor, but, when considered without a determination whether Palshook assaulted Hollis, or the nature of the assault on Andres, they alone do not amount to exigent circumstances.

In conclusion, the record does not support a finding of exigent circumstances, and defendants are not entitled to summary judgment on the claim that their entry to plaintiffs' house was lawful.

## II. *Excessive Force*

Plaintiffs allege defendants subjected them to unreasonable force in effecting their arrests. Defendants assert they are entitled to judgment that the force used was not excessive as a matter of law, or, alternatively, they are protected by qualified immunity.

The claim of excessive force must be analyzed apart from the unlawful entry

---

way creates a material issue as to whether the arrest began in the doorway at all.

**9.** *See, e.g., Ingram v. City of Columbus,* 185 F.3d 579, 587 (6th Cir.1999) (internal citations omitted).

that preceded the arrest. Even if defendants are liable for unlawful entry, plaintiffs are not automatically entitled to prevail on their claim of excessive force. Thus, the use of force in this case will be analyzed to see whether the defendants, having made the decision to arrest Palshook, and later Lopez, used force that was reasonable under the circumstances. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

### 1. *Palshook*

After deciding to arrest Palshook, Andres approached Palshook with the cuffs, at which point she swung her arm and the cuffs flew out of his hand. Plaintiffs assert that this was merely a reaction by Palshook, not an attempt to harm anyone. It is undisputed, however, that she did cause the cuffs to go flying. Defendants also assert that Palshook began kicking at them. Plaintiffs do not deny that Palshook was kicking. At the very least it is clear Palshook was not cooperating, and defendants were entitled to use some force in apprehending her.

There is a dispute between the parties as to the technique defendants used to take Palshook to the floor. I do not believe the distinction between the terms "tackle" and "balance displacement technique," as used by the parties in this action, amounts to an issue of material fact, however. The undisputed facts concerning the apprehension of Palshook show that summary judgment is appropriate.

Palshook's excessive force claim is based in part on an assertion that no force was necessary to take her into custody. While plaintiff is correct that where no force is necessary to effect an arrest none is permitted, such was not the case with her arrest. Palshook admits causing the cuffs to fly out of Andres' hand, and, as noted, she does not deny kicking the officers. Palshook therefore cannot successfully

claim she did nothing to warrant a use of force.

Next, Palshook's argument seems to be that the "tackle", by virtue of being designated a "tackle", is necessarily excessive. As apparent support for this argument, plaintiffs quote Hollis' statements that tackling is the wrong way to subdue a suspect, and that the officers don't tackle people. This misses the point. Hollis' statements were clearly intended as a counter to plaintiffs' allegation that defendants tackled Palshook rather than an admission that they tackled her. Viewing the evidence in the light most favorable to plaintiffs, however, I assume there was an apparent "tackle" rather than an executed "balance displacement technique." Yet even if Hollis' statements are now taken as a condemnation of the *technique* he and Andres actually used, this does nothing to establish the *force* as excessive or unreasonable.

 The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* (*citing Terry v. Ohio,* 392 U.S. 1, 20–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The defendants here reasonably perceived that they faced an aggressive subject for arrest. After Palshook flung the cuffs from Andres' hands and kicked the officers defendants had reason to believe Palshook would not go peaceably and they had a right to use some force.

Palshook claims she injured her head when she bumped it on the couch while she was being taken to the floor. Plaintiff also alleges she had some bruises on her arms. Finally, Palshook asserts Jarrett grabbed her ankles. While plaintiff correctly asserts that a severe injury is not necessary for an excessive force claim [10], it is notable that Palshook required no medical attention for these injuries and has no sustained injury at this time. The bumped head,

---

10. *Ingram v. City Of Columbus,* 185 F.3d 579, 597 (6th Cir.1999) (stating "we have held that a plaintiff may allege use of excessive force

even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage.")

bruised arms, and held ankles, combined with an assertion that a "tackle" was used instead of a more appropriate technique, when viewed with the fact that Palshook knocked the handcuffs out of Andres' hands and kicked at the officers, is not enough to maintain that the force used by defendants was unreasonable. *See* 490 U.S. at 396, 109 S.Ct. 1865 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.") (internal citations omitted). Thus, summary judgment in favor of the defendants is appropriate on Palshook's use of force claim.

### 2. *Lopez*

■ Plaintiffs claim that Lopez was subjected to unreasonable force when both his hands were cuffed to the bench in the holding cell. Defendants assert that Jarrett, who cuffed Lopez, is entitled to summary judgment as a matter of law and on the basis of qualified immunity.

Jarrett cuffed Lopez's hands to the bench in the holding cell pursuant to a written departmental policy. The policy developed because the Township had experienced vandalism problems with prisoners placed in the holding cell. The policy is silent as to whether one or two hands is to be cuffed.

Lopez alleges no injuries from his handcuffing, nor does he allege any forceful treatment aside from the cuffs themselves being used. Defendants state that Lopez was cooperative and no force was needed to seat him on the bench with the cuffs. Lopez was initially cuffed by both hands, and was released from the cuffs to use the bathroom and get a drink. Later, Lopez asked that he be cuffed by only one hand and the officer complied. When Lopez felt the handcuff was too tight, he asked the officer to loosen it and the officer did so.

Insofar as Lopez's claim rests entirely on the fact that he was handcuffed, at some point, by both hands, to the bench, there is no cause of action for excessive force. It may true that it was unnecessary to cuff both hands, or even to cuff Lopez at all, but in the context of placing an individual under arrest, use of handcuffs alone cannot amount to excessive force.[11] Jarrett was merely following departmental policy in cuffing Lopez to the bench, he used no force on Lopez to do so, and he complied with every request Lopez made to improve his comfort. Thus, summary judgment in favor of defendants is appropriate for Lopez's excessive force claim.

### B. *Qualified Immunity*

Because I have concluded that genuine issues of material fact exist regarding plaintiffs' unlawful entry claim, I will consider defendants' defense of qualified immunity.

■ Defendants assert that if they did violate plaintiffs' constitutional rights, they are protected by qualified immunity. Under the doctrine of qualified immunity, government officials engaged in the performance of discretionary functions are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

On a motion for summary judgment, the moving defendant must show that no genuine issues of material fact remain that would defeat his claim of qualified immunity. The plaintiff has the burden of (1) identifying a clearly established right alleged to be violated, and (2) establishing that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right. *Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir.1995) (internal citations omitted). Qualified immunity is a question of law that should be decided as

---

**11.** *Compare Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir.1993) (recognizing a claim of excessive force with an *exceedingly* forceful handcuffing) (emphasis added).

early as possible. Summary judgment is not appropriate, however, if there are factual disputes involving an issue on which the question of immunity turns, " 'such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.' " *Id.* at 1161 (internal citations omitted).

It is clearly established law that The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, does not permit warrantless entry into a suspect's home for a routine felony arrest absent valid consent or exigent circumstances. *Payton v. New York*, 445 U.S. 573, at 576, 583, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Additionally, plaintiffs have sufficiently alleged a violation of the right to be free from such a warrantless entry. The question left to be determined is whether a reasonable police officer in the defendants' shoes would have believed that exigent circumstances existed to justify the warrantless entry to arrest Palshook.

As discussed above, a genuine issue of material fact exists as to whether exigent circumstances existed under the "hot pursuit" exception to the warrant requirement such that a reasonable officer would have believed he could enter plaintiffs' home without a warrant. I do not know whether an assault on Hollis occurred. Also, I do not know the nature of the assault on Andres. Determination of these facts is properly reserved for the fact-finder. Without knowing exactly what conduct transpired, I cannot determine whether defendants' conduct was reasonable under the circumstances.

Thus, defendants are not entitled to qualified immunity on this claim because genuine issues of material fact exists as to whether defendants actually violated plaintiff's clearly established rights, and if so, whether the conduct was reasonable under the circumstances.

### C. *State Common Law Claims*

#### 1. *Assault and Battery*

Plaintiffs claim defendants Jarrett, Andres, and Hollis are liable for assault and battery of Palshook based on the force they used to bring her under control in her living room. Defendants assert their O.R.C. § 2744.03(A)(6) immunity as a complete defense.

Under § 2744.03(a)(6), an employee of a political subdivision is immune from liability in a civil action brought based on any act or omission in connection with a governmental function unless on of the following exceptions applies:

(a) The employee's acts or omissions are manifestly outside the scope of employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Liability is expressly imposed upon the employee by a section of the Revised Code.

Thus, because defendants are employees of a political subdivision, *see* O.R.C. § 2744.01(B), and police duties are a governmental function, *see* O.R.C. § 2744.01(C), they are entitled to immunity for any possible assault claim unless one of the exceptions applies.

▮ Plaintiffs claim defendants acted with malice when they used force to arrest Palshook in her home. The allegations plaintiffs make in support of their claim of malice, however, do not create a material issue of fact. Plaintiffs first allege that defendants used a tackle technique designed to inflict punishment on Palshook. There is no evidence of such a motivation on the part of the officers. Rather, as discussed above, the record shows that defendants used force that was reasonably necessary to bring Palshook under control after she flung handcuffs out of Andres' hand and kicked at the other officers as they attempted to arrest her.

Plaintiffs next allege that Andres and Hollis "both had past histories" with Palshook. It is not clear what is meant by this statement or why the court should infer malice from it. Hollis knew Palshook previously as he was a podiatry patient of hers. There is, however, no evidence of malice arising from this relationship. Additionally, plaintiffs allege that Chief McClung spoke to Lopez about Palshook's history of threatening the trustees. (Lopez Dep. at 117). This comment allegedly made by McClung after Palshook's arrest, however, does nothing to establish a history with Hollis or Andres. There is no evidence to suggest Hollis or Andres knew about Palshook's previous conflicts with the trustees (presumably of the Township) or had any ill will towards her because of them.

Because there is no evidence defendants acted maliciously, and because none of the other exceptions apply, defendants are immune from any claim of assault and battery. Thus summary judgment in favor of defendants is appropriate on this claim.

### 2. Malicious Prosecution

Plaintiffs claim that defendants subjected them to malicious prosecution for the charges of assault on police officers, resisting arrest, and obstructing official business. Defendants assert that the claim is barred by the advice of counsel defense.

■ Ohio law provides that reliance on the advice of counsel in filing charges is an affirmative defense in an action for malicious prosecution. *Bacon v. Patera,* 772 F.2d 259, 265 (6th Cir.1985) (*citing Reenan*

*v. Klein,* 3 Ohio App.3d 142, 444 N.E.2d 63 (1981)). It is undisputed that before Andres or Jarrett signed any of the criminal complaints, Andres called prosecutor Lynne King to discuss what charges should be filed against plaintiffs. The complaints were signed in accordance with King's advice, and King's testimony establishes that Andres fully disclosed all the facts necessary to obtain accurate advice. *See id.*(stating that to assert the defense, the defendant must have disclosed all facts necessary for accurate advice). Thus, summary judgment in favor of defendants is appropriate on this charge.

Additionally, defendants are immune under § 2744.03(A)(6).

### 3. False Arrest and Imprisonment

■ Finally, plaintiffs claim defendants subjected them to false arrest and imprisonment. Defendants assert that, as with the other common law tort claims, they are immune under O.R.C. § 2744.03(A)(6).

Plaintiffs make no argument against the application of immunity, and present no evidence that any of the exceptions to § 2744.03(A)(6) apply. Additionally, the Revised Code does not expressly impose liability on police officers for false arrest and imprisonment. Thus, summary judgment in favor of defendants is appropriate on this claim.

### Defendants McClung Perkins Township

Plaintiffs claim there is a Township policy requiring police officers to obtain information from a person involved in an investigation to complete a report.[12] Plaintiffs argue this "policy" is the cause of the

---

12. It is noted here that in their complaint plaintiffs made a claim against the Township and McClung based on allegedly inadequate training of the Officers. Plaintiffs have abandoned these claims. Rule 56(e) of the Federal Rules of Civil Procedure states "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Plaintiffs failed to respond to defendants' motion for summary judgment with any facts showing a genuine issue for trial regarding alleged inadequate police training. Additionally, there is no evidence in the record that would tend to support such a claim. Thus, summary judgment shall be granted in favor of the Township and McClung on this issue.

alleged illegal seizure they were subjected to by the Officers, and that under *Monell*[13], the Township and McClung are liable for the acts of the Officers.

It is not necessary to reach the issue of whether such a policy exists because the plaintiffs have not successfully alleged deprivation of any constitutional right. As discussed above, Jarrett had a reasonable suspicion that plaintiffs were engaged in criminal activity when he arrived at the construction site. Thus, he was entitled to detain them briefly for an investigatory stop. Under these circumstances there was no violation of any constitutional right to "walk away"; officer Jarrett was entitled to try to obtain information necessary to perform his investigation of the complaint.

Even if the alleged "policy" *could* result in constitutional violations, here there is no cause of action. The township cannot be held liable for a constitutional violation which could have occurred but did not. *See Garner v. Memphis Police Dep't,* 8 F.3d 358 (6th Cir.1993) (discussing *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)). Because there is no possible Township liability, there is likewise no liability for McClung for his alleged role in implementing the "policy". Thus, summary judgment shall be granted in favor of defendants on this issue.

### Defendant Sausser

Plaintiffs claim Sausser subjected them to malicious prosecution for the criminal trespass charge. Defendant claims she is entitled to summary judgment.[14]

■ The elements of malicious prosecution are (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused. *Trussell v. General Motors Corp.,* 53 Ohio St.3d 142, 559 N.E.2d 732 (1990).

■ Plaintiffs claim Sausser acted maliciously in filing the trespass complaint. In their motion in opposition to the defendant officers' motion for summary judgment, plaintiffs allege the following: 1) Jarrett's return visit to Sausser was unsolicited and Sausser was not interested in discussing the day's events; 2) Jarrett returned to Sausser's residence after Sausser's normal bedtime; 3) Jarrett asked Sausser to sign some papers but did not explain that the purpose was to file a criminal complaint; 4) Sausser did not know the purpose was to file a criminal complaint; and 5) Sausser would not have signed the papers had she known the purpose was to file a criminal complaint.

Plaintiffs make these allegations in an attempt to show that Sausser never intended to file a complaint. Yet, in their motion in opposition to Sausser's motion for summary judgment, plaintiffs argue that Sausser acted maliciously towards plaintiffs in filing the charges against them. Even when all the evidence put forth is considered in the light most favorable to plaintiffs, however, reasonable minds could not conclude that Sausser acted maliciously.

Plaintiffs assert that Sausser was a meddler at the construction site and that she tried to control activities there even though she had no right to do so. Plaintiffs offer no evidence to support this allegation. Additionally, plaintiffs argue Sausser targeted them because she did not want anyone to enjoy the greenery that was being discarded. Again, plaintiffs offer no evidence to support this proposition. On the contrary, plaintiffs assert several times in their motion opposing summary

**13.** *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that only when the execution of governmental policy or custom inflicts the injury may a municipality be held liable under § 1983).

**14.** Defendant has pending a motion to strike the affidavit of Carl Hudson. (Doc. 96). Because the affidavit does not effect the outcome of this order, no ruling shall be issued and the affidavit will remain on the record.

judgment for the officers that Sausser did not care if plaintiffs took the bushes. Jarrett also testified that Sausser stated plaintiffs could have the bushes.

Finally, even if Sausser had no right to control the land subject to Cardinal's lease, and even if plaintiffs had Hudson's permission to be on the construction site, it is undisputed that Sausser had the right to control and use her rear driveway. Plaintiffs' state that Sausser came and spoke to them with a concern that plaintiffs' van and trailer were blocking her rear driveway. Sausser's belief that her driveway was blocked and plaintiffs' refusal to move is enough to create probable cause for the trespassing complaint.[15] The existence of probable cause further negates the possibility that Sausser acted maliciously in filing the charges against plaintiffs.

Having concluded probable cause existed and malice did not, I do not have to reach the argument whether the claim's dismissal amounted to termination in favor of the plaintiffs. Without two of the necessary elements, there can be no claim for malicious prosecution. Thus, summary judgment in favor of defendant is appropriate.

For the foregoing reasons, it hereby

**ORDERED THAT**

1. Defendants Andres', Hollis', and Jarrett's motion for summary judgment be, and hereby is, granted in part and denied in part:

 a. Defendants' motion for summary judgment in favor of the officers in their individual capacities on plaintiffs' state law tort claims is granted;

 b. Defendants' motion for summary judgment in favor of the officers in their individual capacities on plaintiffs' § 1983 claim of unlawful entry to effectuate plaintiff's arrest is denied; otherwise, defendants' summary judgment motion is granted as to the § 1983 claims; and

2. Defendants Perkins Township's and McClung's motion for summary judgment be, and hereby is, granted; and

3. Defendant Sausser's motion for summary judgment be, and hereby is, granted.

**So ordered.**