**Janet M. MINCHELLA,**
**Plaintiff–Appellant,**

v.

**Corey BAUMAN, et al., Defendants–**
**Appellees.**

No. 02–1454.

United States Court of Appeals,
Sixth Circuit.

Aug. 13, 2003.

---

BEFORE: KEITH, SUHRHEINRICH
and CLAY, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Plaintiff–Appellant Janet Minchella appeals from the district court's grant of summary judgment based on qualified immunity in favor of Defendants–Appellees Corey Bauman and Michael Miles ("the Officers"), police officers in Beverly Hills, Michigan, on Minchella's 42 U.S.C. § 1983 claims. Minchella claims that the Officers used excessive force by twisting her arm and slamming her into a police car while arresting her for assault and battery on a police officer. We find that, viewing the facts in favor of Minchella, there exists a material question of fact whether the Officers' actions were reasonable. We REVERSE the grant of qualified immunity and REMAND this cause to the district court.

I.

The facts of this case stem from Minchella's arrest on June 27, 1999. As in most § 1983 cases, Minchella's and the

Officers' account of the events of that day differ. Minchella claims she was peacably driving home from work. When she reached her home, she pulled into her driveway, where she was followed by a police cruiser driven by Bauman. She parked in her garage, exited the vehicle, and was confronted by Bauman. Bauman however claims that as he was driving on Southfield Road. Minchella's vehicle passed him, traveling in the other direction at a high rate of speed. Specifically, Bauman says he clocked Minchella on radar at 59 miles per hour in a 45 mile per hour zone. He claims he completed a u-turn in order to initiate a traffic stop and activated his overhead emergency lights behind Minchella, but she did not stop. Instead, she continued for several blocks until she reached the street on which she lives. She turned onto her street and into her driveway and garage. Bauman states he followed her into her driveway, and admits he exited his vehicle and contacted Minchella. Minchella claims that Bauman began screaming at her "in a very hostile tone," and "pointed a finger in her face, and ordered her back into her vehicle while holding his other hand on his gun." Minchella maintains that she was surprised by Bauman's actions because she "was not speeding or committing any other traffic violation." Bauman does not address what, if any, exchange took place between he and Minchella when he first contacted her. He does state, however, that he decided to issue her a speeding citation. Bauman returned to his car, and subsequently asked Minchella for her driver's license, registration, and proof of insurance. Minchella claims she retrieved the items from her vehicle and "placed them in the gap between the slightly lowered driver's window and the frame."

Bauman claims that Minchella was very agitated and threw the items at him, striking him in the face and chest, and that he called for backup for the purpose of arresting Minchella for assault and battery on a police officer. Minchella concedes that the items "may have fallen on [Bauman's] lap," but strongly contends she never threw the items at him. Miles arrived as backup and the Officers told Minchella she was under arrest. Minchella claims that the Officers "grabbed her and twisted her arms and then violently rammed her into the front end of [ ] Bauman's squad car." Moreover, Minchella claims that one of the Officers "kicked [her] right ankle with great force while [she] was being rammed into the front of the car...." After she was secured in Bauman's police cruiser, the Officers conducted a search of Minchella's vehicle and retrieved a diving knife with a 3½ inch blade.

Minchella was arraigned on July 1, 1999, and charged with carrying a concealed weapon, to wit, the diving knife, and resisting and obstructing a police officer. She was not charged with assault and battery on a police officer. The concealed weapon charge was dismissed at a preliminary hearing, and Minchella was bound over for trial on the charge of resisting and obstructing. On August 22, 2000, Minchella pled guilty to an amended count of disorderly conduct for using profanity in public after her arrest, and the charge of resisting and obstructing a police officer was dismissed.

On October 26, 2000, Minchella filed a five-count complaint against the Officers in the district court below, including a 42 U.S.C. § 1983 claim and four state law tort claims.[1] The Officers moved for summary judgment on all claims. The district court granted summary judgment on Minchella's

---

**1.** Minchella's state claims included battery, assault, false arrest, and intentional infliction of emotional distress. Minchella's § 1983

claim itself had four aspects to it. First, she claimed that the Officers used excessive force in her arrest in violation of the Fourth

state law false arrest claim and on all aspects of her § 1983 claim, finding that the Officers were entitled to qualified immunity from liability for their actions as peace officers. The district court dismissed the remaining three state law claims, utilizing its discretion not to exercise supplemental jurisdiction over state claims once summary judgment had ben granted on the federal claims.

Minchella filed a notice of appeal on April 8, 2002, and this matter is timely before this Court. On appeal, Minchella has raised only her § 1983 excessive force claim.

## II.

We review the district court's grant of summary judgment *de novo*, drawing all inferences in favor of Minchella, the non-moving party. *Hinchman v. Moore*, 312 F.3d 198, 201 (6th Cir.2002); *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir.1999). If there is a genuine issue of material fact, then summary judgment is inappropriate and the cause should proceed to a jury.

A review of a question of qualified immunity under § 1983 is limited to a two-step process. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). First, we must determine whether "[t]aken in the light most favorable to the party asserting the injury .... the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.;*

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). If both conditions are met, then qualified immunity is inapplicable.

Minchella claims that the Officers deprived her of her Fourth Amendment right to be free from the excessive use of force in her arrest. Specifically, she claims that the Officers twisted her arms, slammed her into Bauman's police car, and that one of the Officers kicked her in the ankle. Moreover. Minchella has also presented evidence that she required treatment for her alleged injuries. She visited several doctors after the incident, each diagnosing her with at least a sprained wrist. She contends that the Officers' actions were excessive and unreasonable under the totality of the circumstances surrounding her arrest.

The first part of the *Saucier* test is to determine whether Minchella has properly alleged a constitutional deprivation if everything she claims is true. In *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court established that the right to be free from excessive force during an arrest or investigatory stop is provided by the Fourth Amendment's prohibition against unreasonable seizures. 490 U.S. at 394. Therefore, we find that Minchella has properly alleged a constitutional deprivation under the Fourth Amendment.

Nonetheless, Minchella can only survive qualified immunity if no officer would have found the Officers' actions here to be rea-

Amendment. Second, she claimed false arrest under the Fourth Amendment. Third, she claimed unlawful search and seizure un-

der the Fourth Amendment. And lastly, she claimed violations of substantive due process under the Fifth Amendment.

sonable.[2] Under the Fourth Amendment, an officer's use of force is likewise bound by a standard of reasonableness. The Fourth Amendment's reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including[: (1) ] the severity of the crime at issue[; (2) ] whether the suspect poses an immediate threat to the safety of the officers or others[;] and [ (3) ] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396 (citing *Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). We rely on these three factors to determine whether an officer's use of force is objectively reasonable. *See Patrick v. City of Detroit,* 906 F.2d 1108, 1115 (6th Cir.1990). However, an officer's "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 22–27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The Officers suggest that their actions were necessarily reasonable even if Minchella was injured, because Minchella, as a larger woman refusing to be arrested, required more force to be subdued. The Officers are correct that the definition of reasonable force is partially dependent on the demeanor of the suspect. *See, e.g., Waggoner v. Mosti,* 792 F.2d 595, 601 (6th Cir.1986) ("If police officers were foreclos-

ed from the use of force to effect the arrest of criminal suspects, it is doubtful that any suspect would peacably submit to arrest."). However, Minchella claims questions of material fact exist. She contends that she did not physically resist arrest, and that the Officers nonetheless used more force than necessary under the totality of the circumstances.

Minchella, although being arrested for assault and battery, was in reality being arrested for nothing more than "throwing" a piece of paper at Bauman. Although the Officers may have had the technical right to effect an arrest, there is little doubt that Minchella's crime was not severe. Minchella, at the age of 39, had no criminal history whatsoever, and was only being arrested in this instance for a very minor occurrence. Accordingly, Minchella posed no threat to the Officers or the community. The reasonableness of the Officers' actions must be weighed against this backdrop.

There are two videotapes of Minchella's encounter with the Officers.[3] The Officers contend that the videotapes demonstrate that their actions were reasonable, and thereby dispose of any questions of material fact and necessitate a finding of qualified immunity. The videotapes confirm that Bauman told Minchella she was under arrest and asked her to place the personal effects she was holding on his car's hood so that he could handcuff her. Minchella refused, told the Officers that she was on

---

**2.** Minchella's only claim on appeal is one of excessive force in her arrest, so therefore whether Minchella actually assaulted Bauman is irrelevant to our analysis. We must look past whether Bauman had probable cause to arrest Minchella, and look only to the reasonableness of his and Miles' actions in regard to the arrest itself. Below, the district court misanalyzed Minchella's § 1983 false arrest claim. The court held that Minchella had effectively waived her claim because she had pled guilty to disorderly conduct. However, Minchella had pled guilty to disorderly conduct in regard to her actions *after* she was

arrested, but not in relation to the alleged assault and battery for which Bauman had originally intended to arrest her. Accordingly, the district court erred to the extent it found Minchella had waived the claim below, but as stated above, Minchella has not challenged this ruling on appeal.

**3.** In Beverly Hills, each police cruiser is equipped with a camera on the dashboard to record officers' encounters with citizens. Here, there is a videotape from each of Bauman's and Miles' cruisers.

"[her] property," shouted "I am not" when being told she was under arrest, and began to turn away from the Officers, insisting that she was going to call her lawyer. The videotapes confirm that Miles restrained Minchella by pulling her right arm behind her back, while Bauman grabbed her left arm. The Officers then walked her forward into the police car as they attempted to handcuff her. However, due to the angle of the cameras, the videotapes are inconclusive as to whether Minchella was "slammed" into the car, and as to whether either officer kicked her in the ankle. The videotapes are also inconclusive as to whether Minchella physically resisted the arrest. The only thing conclusive from the videotapes is that Minchella was agitated and verbally protested the arrest. Therefore, the videotapes leave unanswered the questions of fact disputed between the parties.

Moreover, the district court found that "while certainly not overwhelming, the facts, when taken in a light most favorable to [Minchella], give rise to a genuine issue of material fact as to whether excessive force was used." Because the case was before it on summary judgment, the district court should have ended its analysis there and proceeded to a trial on the merits of the § 1983 claim. On a motion for summary judgment, the only question before the district court is whether there exists enough of a factual question to permit the case to go to trial. *See* Fed. R.Civ.P. 56(c); *see also Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir.2003). However, the district court concluded that, although there was a question of material fact as to whether the force used was excessive, there was no genuine issue of material fact as to whether the Officers' actions were reasonable, and granted summary judgment:

> Moreover, the videotape clearly establishes that Plaintiff, not a small individu-

al, walked away from the officers when told that she was being arrested. (Videotape.) It was only then that the officers grabbed her wrists and shoved her against the patrol car in order to handcuff Plaintiff. The physical confrontation ended quickly; Plaintiff was immediately restrained by handcuffs, and was thereafter placed in the patrol car without incident. The videotape further shows the officers gently returning Plaintiff's dogs into the fenced in backyard, including one of the officers carrying one of them into the enclosure.

> Therefore, even if the officers' shove is deemed *to be excessive,* the Court finds that it would not be clear to reasonable officer *that the conduct in question was unlawful.* The officers were dealing with an agitated suspect who verbally resisted arrest–a situation which could reasonably call for the forceful restraint of Plaintiff. Moreover, the officers used minimal force–as expressed by the Supreme Court, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham,* 490 U.S. at 396 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)). Defendants, under *Saucier,* are entitled to qualified immunity on Plaintiff's § 1983 excessive force claim.

(citations omitted) (emphasis added). We find the district court's holding to be inconsistent. There cannot be a finding that the arrest involved excessive force and a finding that the Officers' actions were reasonable. By definition, that which is excessive is unreasonable. *See, e.g., Adams v. Metiva,* 31 F.3d 375, 388 (6th Cir.1994) (stating that the use of excessive force is an objectively unreasonable action in light of clearly established law); *see also* BLACK's LAW DICT. 561 (1990) (defining "excessive" as something tending to go be-

yond the *"reasonable* limit or measure") (emphasis added). We agree with the district court's initial determination that there exists a genuine issue of material fact whether the Officers' actions were excessive.

Under the totality of the circumstances and the factual disputes that exist, we find summary judgment inappropriate and believe it necessary to reverse the district court's grant of summary judgment and remand this case for trial.

### III.

For the foregoing reasons, we REVERSE the district court's grant of qualified immunity in favor of the Officers and REMAND this cause to the district court for further proceedings not inconsistent with this opinion.