*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0388p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FRANCINE SOLOMON,

*Plaintiff-Appellee,*

*v.*

No. 03-1707

AUBURN HILLS POLICE DEPARTMENT, a municipal
corporation,

*Defendant,*

OFFICER DAVID MILLER,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-73847—George E. Woods, District Judge.

Argued: August 13, 2004

Decided and Filed: November 10, 2004

Before: KEITH, MARTIN, and ROGERS, Circuit Judges.

_____

#### COUNSEL

**ARGUED:** Daniel J. Kelly, COX, HODGMAN & GIARMARCO, Troy, Michigan, for Defendant. Barbara H. Goldman, SHELDON L. MILLER & ASSOC., Southfield, Michigan, for Plaintiff. **ON BRIEF:** G. Gus Morris, COX, HODGMAN & GIARMARCO, Troy, Michigan, for Appellant. Barbara H. Goldman, SHELDON L. MILLER & ASSOC., Southfield, Michigan, for Appellee.

KEITH, J., delivered the opinion of the court, in which MARTIN, J., joined. ROGERS, J. (pp. 7-8), delivered a separate dissenting opinion.

_____

#### OPINION
_____

DAMON J. KEITH, Circuit Judge. Defendant Officer David Miller appeals the district court's order denying his motion for summary judgment based on qualified immunity. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

1

## I. BACKGROUND

### A. Procedural

This lawsuit arises out of the arrest of Plaintiff Francine Solomon ("Solomon"). After she was arrested, Solomon filed a complaint against the Auburn Hills Police Department ("AHPD") and Officer David Miller ("Officer Miller") alleging violations of 42 U.S.C. § 1983, as well as state law claims for assault and battery and gross negligence. Solomon then filed a motion to amend her complaint, and both defendants moved for summary judgment arguing, *inter alia*, that Officer Miller was entitled to qualified immunity.

On May 9, 2003, the district court granted the AHPD's motion for summary judgment because Solomon had not alleged that a policy, procedure, or custom of the City of Auburn Hills was the cause of the alleged deprivation. Moreover, the district court ruled that Solomon should be allowed to amend her complaint to clarify that she was suing Officer Miller in his individual capacity. The district court denied Officer Miller's motion for summary judgment after finding that he was not entitled to qualified immunity as to the Fourth Amendment claims because a jury question existed as to whether his conduct was objectively reasonable under the circumstances. The district court also left standing the state claims against Officer Miller for assault and battery and gross negligence.

Officer Miller timely filed an appeal with this court as to the issue of qualified immunity. Our opinion today addresses whether the district court erred when it determined that Officer Miller was not entitled to qualified immunity and consequently denied his motion for summary judgment. For the reasons that follow, we find that the district court was correct in its decision; Officer Miller was not entitled to qualify immunity and, therefore, he was not entitled to summary judgment.

### B. Factual

On Saturday, March 24, 2001, Solomon took her six children and several of their friends to see a movie at the Star Theatre at Great Lakes Crossing ("Theatre") in Auburn Hills, Michigan. Because the children ranged in age from three to eighteen, Solomon planned to accompany the younger children to a G-rated movie and Solomon's eighteen-year-old son and his girlfriend planned to accompany the older children to an R-rated movie. Solomon explained this to the ticket seller when she purchased the tickets for the two movies. When her adult son attempted to enter the R-rated movie theater with the other children, the usher informed him that the children would not be allowed into the theater without a parent. Solomon then approached the usher and explained that she was the mother of several of the children and that they had permission to be in the R-rated movie, but she would be watching the G-rated movie with her younger children. The usher referred Solomon to customer relations.

Solomon then explained her situation to the Theatre manager, who responded that Theatre policy required a parent or guardian to accompany minor children into an R-rated movie. Solomon left customer relations and walked with her younger children toward the movie theater showing the G-rated movie. Before she reached the theater entrance, another Theatre employee informed Solomon that the older children could not see the R-rated movie without her accompanying them. Even though Solomon did not want to take her young children to see an R-rated movie, she went into the R-rated movie theater as instructed by Theatre management.

After Solomon was seated in the R-rated movie theater, the Theatre security guards entered and informed Solomon that she had to leave because she had not purchased tickets for that particular movie. Solomon refused to leave because she was following the manager's instructions. Shortly thereafter, AHPD officers Miller and Raskin—both of whom were between 230 and 250 pounds and at least five-feet-eight-

inches tall[1]—arrived. The officers entered the theater, found Solomon sitting with her three young children, and instructed Solomon to leave. Solomon informed the police officers that she had purchased tickets and attempted to explain the situation, but the officers insisted that she leave. After Solomon refused, Officer Miller told her that she was under arrest for trespassing. Officer Miller grabbed her arm to make her leave, and Solomon, pushing her foot against the seat in front of her, backed away from the officer. Officer Miller then informed her that she was under arrest for assaulting a police officer.[2] At that point, Officer Raskin asked Solomon to speak with the police officers in the lobby and Solomon agreed. Solomon's children and their friends followed Solomon out of the R-rated movie theater.

When Solomon entered the hallway, she handed her toddler to her son's girlfriend, and Solomon explained to her children that she was going to talk with the officers. In the lobby, Officer Raskin motioned for Solomon to walk toward him. As Solomon was walking toward Officer Raskin, Officer Miller came up behind her, grabbed her arm, and attempted to leg sweep her. Solomon tripped but did not fall; when she regained her balance, she folded her arms across her chest. In response to Officer Miller's action, Solomon yelled, "Why are you doing this[?] I did not do anything."

At this point, Officer Miller grabbed her left arm and Officer Raskin grabbed her right arm. The officers threw Solomon up against a wall and knocked her face into a display case. Solomon did not attempt to pull away from them and the Officers gave no directives to Solomon. Officer Raskin then handcuffed Solomon's right arm behind her back. Officer Miller pushed up against Solomon with his entire body weight, shoving his arm against her back and his leg in between hers. Solomon was pinned against the wall and could not move; her right arm was already handcuffed and her left arm was straight along her side. Without uttering any instruction to Solomon, Officer Miller forcibly bent her left arm behind her and "hear[d] a popping sound and her left arm [went] limp." J.A. at 148 (Deposition of Officer Miller).

Solomon was subsequently taken to Pontiac Osteopathic Hospital, where she was diagnosed with a comminuted fracture of her left elbow; she also had several bruises from being thrown against the wall. Solomon was hospitalized for six days for surgical treatment of the fracture and underwent a second operation at a later date. She also underwent extensive physical therapy and endures continual complications.

Solomon was later charged with resisting arrest, assault on a police officer, and trespass. As part of a plea bargain, Solomon pleaded guilty to trespass and attempted resisting arrest.

## II. DISCUSSION

### A. Standard of Review

While a denial of summary judgment is usually considered an interlocutory order and not appealable, when the denial occurs because the moving party is not entitled to qualified immunity, we may review that decision. *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002). All facts are viewed in the light most favorable to the plaintiff and the relevant questions are "strictly legal." *Id.* at 299. "As a purely legal determination, the district court's denial of qualified immunity is subject to *de novo* review." *Thomas v. Cohen*, 304 F.3d 563, 568 (6th Cir. 2002). "[T]o the extent that there is disagreement about the facts . . . we must review the evidence in the light most favorable to the Plaintiff[ ], taking all inferences in [her] favor." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004).

---

[1]In his deposition, Officer Miller testified that he was between five-feet-ten-inches and five-feet-eleven-inches tall and weighed between 230 and 235 pounds. J.A. at 128. In her complaint, Solomon stated that she was five-feet-five-inches tall and weighed 120 pounds. J.A. at 6.

[2]Solomon asked Officer Miller why she was being arrested for assaulting an officer, and he replied that she had kicked an officer. J.A. at 77-78. Solomon denies kicking either officer.

## B. Analysis

Through the use of qualified immunity, the law shields "government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The United States Supreme Court has constructed a two-part test to determine whether an officer-defendant should be granted qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, a court must consider whether the facts, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id.* at 201. If the answer is yes, the court must then decide "whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted." *Id.* at 202.

In the case before us, the district court reached the correct decision in denying Officer Miller summary judgment, but its rationale intertwined the standard for determining qualified immunity and the standard for granting summary judgment. The district court failed to completely evaluate the second prong of the *Saucier* test. Instead of concluding whether or not Officer Miller acted objectively reasonable under the circumstances, the district court merely found that a jury question exists on that issue. This comes, however, as no surprise. As recognized by the concurring Justices in *Saucier*, the two-part test "holds large potential to confuse." *Saucier*, 533 U.S. at 210 (Ginsburg, Stevens, Breyer, JJ., concurring). Because we are to review the district court's decision *de novo*, the district court's confusion of the standard does not require reversal. Set forth below is the proper analysis for determining whether qualified immunity should result in summary judgment for a defendant—in this case, Officer Miller.

### 1. Violation of Constitutional Right

As instructed by the Court in *Saucier*, this court must "concentrate at the outset on the definition of the constitutional right and [then] determine whether, on the facts alleged, a constitutional violation could be found. . . ." *Saucier*, 533 U.S. at 207. Here, Solomon brought forth a claim that Officer Miller used excessive force when he arrested her, thereby giving rise to a violation of her constitutional protection against unreasonable seizures under the Fourth Amendment. This court has recognized a person's constitutional "right to be free from excessive force during an arrest. . . ." *Minchella v. Bauman*, 72 Fed. Appx. 405, 2003 WL 21957034, at **3 (6th Cir. Aug. 13, 2003) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)); *see also Phelps*, 286 F.3d at 300 (indicating that when allegations of excessive force occur "during the course of the arrest of a free person, . . . the parties' rights and liabilities are governed by the Fourth Amendment's reasonableness standard"). This also includes a claim based on excessive force used in handcuffing. *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir. 1993); *see also Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (recognizing that "right to be free from 'excessively forceful handcuffing' is a clearly established right for qualified immunity purposes"); *Turek v. Saluga*, 2002 WL 31119691, at **2 (6th Cir. Sept. 24, 2002) (citing *Walton*, 995 F.2d at 1342).

After the constitutional right has been defined, we still must inquire whether a violation of Solomon's right to be free from excessive force could be found. Solomon walked out of the movie theater into the hallway as instructed by the officers. Once in the hallway, Officer Miller attempted to knock her onto the ground by kicking her legs even though she was not a flight risk and, in fact, was following Officer Raskin's order. Then, Officer Miller, along with Officer Raskin, shoved her into a display case. Even though Officer Raskin had Solomon's right arm handcuffed and even though Solomon was not actively resisting arrest, Officer Miller pushed his entire weight against Solomon's body, shoving his hand into her back and his leg into her legs. Officer Miller then grabbed Solomon's arm and twisted it behind her with such force that he fractured it in several places. Under the circumstances "[t]aken in the light most favorable to the party asserting the injury," *Saucier*, 533 U.S. at 201, Officer Miller's overly aggressive actions could have violated Solomon's Fourth Amendment right to be free from excessive force during an arrest.

## 2. Constitutional Right Clearly Established

Once a potential violation of a plaintiff's constitutional right has been established, we next decide whether that right was clearly established. In so deciding, we must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Phelps*, 286 F.3d at 299 (quoting *Saucier*, 533 U.S. at 202) (internal quotations omitted). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, *without regard to their underlying intent* or motivation." *Graham*, 490 U.S. at 397 (emphasis added).[3] Discerning reasonableness "requires a careful balancing of . . . the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (citations and internal quotations omitted). We must remember to consider the reasonableness of the officer at the scene, *id.*, and keep in mind that officers must often make split-second judgments because they are involved in "circumstances that are tense, uncertain, and rapidly evolving," *id.* at 397. "It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Saucier*, 533 U.S. at 205. If an officer, therefore, makes a mistake as to how much force is required, he will still be entitled to qualified immunity so long as that mistake was reasonable. *Id.* Thus, to find Officer Miller shielded from his actions and therefore entitled to qualified immunity, we must find that Officer Miller's use of force under the circumstances was objectively reasonable.

In determining objective reasonableness of an officer accused of using excessive force, we will consider several factors. We "should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Burchett*, 310 F.3d at 944 (citations and internal quotations omitted). In addition, we have also found that "the definition of reasonable force is partially dependent on the demeanor of the suspect." *Minchella*, 2003 WL 21957034, at \*\*3 (officers asserting that large plaintiff who refused to be arrested required more force). In applying these considerations to the facts at hand, it would be clear to a reasonable officer that the amount of force used against Solomon by Officer Miller was unlawful.

First, Solomon was being arrested for trespassing. Therefore, "[t]he reasonableness of the Officer['s] actions must be weighed against this backdrop." *Id.* The crime at issue here was a minor offense and certainly not a severe crime that would justify the amount of force used by Officer Miller.

Moreover, Solomon posed no immediate threat to the safety of the officers or others. She was surrounded by her children, including toddlers. Solomon bore no weapon, and she made no verbal threats against the officers. We must also consider the size and stature of the parties involved. Here, each of the officers stood at least five-feet-eight-inches tall and weighed between 230 and 250 pounds. By stark contrast, Solomon stood five-feet-five-inches tall and weighed approximately 120 pounds. Under these facts, Solomon posed no immediate threat to the officers' safety.

Finally, it is undisputed that Solomon did not attempt to flee. Solomon cooperated with the officers by leaving the movie theater and accompanying them out into the lobby. She also complied with the request of Officer Raskin who motioned for her to walk toward him. In taking the facts as Solomon alleges, she did not resist arrest. After she exited the movie theater, she was never told that she was under arrest. The mere fact that she crossed her arms after Officer Miller tried to leg sweep her does not create a presumption of actively resisting arrest that would justify Officer Miller's actions.

---

[3] In his brief, Officer Miller argued that "[w]hile it is true the Plaintiff suffered a relatively severe fracture, there is no evidence this injury was intended by the officer." Appellant's Br. at 18. The law clearly indicates that the officer's intent is irrelevant in determining the reasonableness of his actions.

Qualified immunity will often operate "to protect officers from the sometimes 'hazy border between excessive and acceptable force.'" *Saucier*, 533 U.S. at 206 (citing *Priester v. Riviera Beach*, 208 F.3d 919, 926-27 (11th Cir. 2000)). An officer should be entitled to qualified immunity if he made an objectively reasonable mistake as to the amount of force that was necessary under the circumstances with which he was faced. *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002). The facts here, however, do not present one of those hazy cases. The dissent ignores that the officers here were not faced with a tense and uncertain situation where they feared for their safety and the safety of bystanders. In fact, Solomon cooperated with the officers by leaving the movie theater. It was at that point that Officer Miller began to act with unnecessary, unjustifiable, and unreasonable force. He first attempted to leg sweep her when she was walking, *as instructed*, toward Officer Raskin. Officer Miller then shoved her into the display case, putting his entire weight—nearly twice the amount of her own weight—against her. Finally, without directing Solomon to act, he yanked her arm behind her with such force that it fractured. Officer Miller's actions, in total, were excessive and resulted in Solomon suffering from bruising and a fractured arm. In viewing the facts in favor of Solomon, we conclude that no reasonable officer would find that the circumstances surrounding the arrest of Solomon required the extreme use of force that was used here. Officer Miller is no exception. Because Officer Miller's conduct was unlawful under the circumstances, he is not able to escape liability through qualified immunity.

## III.  CONCLUSION

For the foregoing reasons, Officer Miller is not shielded from his actions by qualified immunity and the district court's denial of his motion for summary judgment is **AFFIRMED**.

———————————

**DISSENT**

———————————

ROGERS, Circuit Judge, dissenting.  At worst, Officer Miller made an objectively reasonable mistake as to the amount of force necessary to handcuff Ms. Solomon. Because Officer Miller is therefore entitled to qualified immunity, I respectfully dissent.

The crux of Ms. Solomon's § 1983 claim is the handcuffing that resulted in her broken arm.  It is well established that the handcuffing of a suspect incident to a lawful arrest is constitutional. We held explicitly in  *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001) that "when there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment." *See also Palshook v. Jarrett*, 120 F. Supp. 2d 641, 656 (N.D. Ohio 2000) ("Insofar as [plaintiff's] claim rests entirely on the fact that he was handcuffed [to a bench in a holding cell] . . . there is no cause of action for excessive force.  It may [be] true that it was unnecessary . . . to cuff [plaintiff ] at all, but in the context of placing an individual under arrest, use of handcuffs alone cannot amount to excessive force").  Here, Ms. Solomon pleaded guilty to one count of misdemeanor trespassing and one count of misdemeanor attempted resisting and obstructing a police officer; her arrest was lawful and violated no provision of the Constitution.  The decision to handcuff Ms. Solomon, while perhaps not the most advisable course under the circumstances, was certainly constitutional and did not, without more, amount to excessive force.  Therefore, if Ms. Solomon has a claim of excessive force, it must be found in the amount of force used by Officer Miller in attempting to handcuff her.

As the majority states, "[q]ualified immunity will often operate 'to protect officers from the sometimes hazy border between excessive and acceptable force.'" *Maj. Op.* at 6 (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).  Here, Officer Miller had the right to handcuff Ms. Solomon incident to a lawful arrest and was entitled to use a reasonable amount of force to do so.  This case is indeed one of those that fall in the hazy border between excessive and acceptable force.  It is uncontested that Officer Miller was faced with Ms. Solomon's unwillingness to submit to his constitutional decision to handcuff her.  Ms. Solomon admitted that she pulled her arms together as the officers seized her to avoid the officers' attempt to handcuff her.  There is no evidence that Officer Miller was attempting to subdue Ms. Solomon by breaking her arm.  Officer Miller was surprised by Ms. Solomon's injury and immediately summoned medical attention.

The Supreme Court prescribed the proper analysis in excessive force/qualified immunity cases as follows:

> Because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective.  We set out a test that cautioned against the "20/20 vision of hindsight" in favor of deference to the judgment of reasonable officers on the scene. . . .
>
> The qualified immunity inquiry, on the other hand, has a further dimension. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier*, 533 U.S. at 205 (citations omitted).

In the instant case the objective facts are that an officer with a heavy build was legally trying to handcuff a person of slighter build who was physically trying not to be handcuffed. The precise amount of force needed to accomplish this without injury in the circumstances of this case is so obviously a difficult determination that the mere fact that injury occurred does not amount to evidence of unreasonable force. At worst it was a reasonable mistake for which qualified immunity is appropriate. As the Supreme Court repeated in *Saucier*, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." 533 U.S. at 209.

Because qualified immunity is required in this case under *Saucier*, I respectfully dissent.