NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0552n.06

No. 12-1929

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jun 06, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANDE KHOTHER, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DEEULIS, West Bloomfield Police Officer | ) | EASTERN DISTRICT OF MICHIGAN |
| and LAWSON, West Bloomfield Police | ) | |
| Lieutenant, | ) | |
| | ) | |
| Defendants-Appellants, | ) | |
| | ) | |
| TOWNSHIP OF WEST BLOOMFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

Before: MARTIN and COOK, Circuit Judges; GRAHAM, District Judge.[*]

COOK, Circuit Judge. After West Bloomfield Township police officers Curt Lawson and Jason DeEulis arrested Ande Khother on suspicion of drunk driving, Khother sustained a laceration above his left eye during booking at the police station. He sued the officers and the Township under 42 U.S.C. § 1983, alleging Fourth and Fourteenth Amendment violations. The district court granted summary judgment to the Township, but denied qualified immunity to the officers, leaving two claims pending against them: (1) an excessive-force claim for the cut sustained while in custody;

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

and (2) a malicious prosecution claim. The officers renew their request for qualified immunity in this interlocutory appeal. Because the record demonstrates that the officers did not act objectively unreasonably, we REVERSE.

## I.

A party may appeal a district court's denial of qualified immunity to the extent that the denial turns on legal issues. *Johnson v. Jones*, 515 U.S. 304, 310–12 (1995). Thus, on interlocutory appeal, we "take, as given, the facts that the district court assumed when it denied summary judgment." *Id.* at 319. Yet, where video evidence "blatantly contradict[s]" this version of events, we "view[] the facts in the light depicted by the videotape." *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 493 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 380–82 (2007)). In this case, video evidence blatantly contradicts Khother's primary allegation of abuse: that officers DeEulis and Lawson violated his Fourth Amendment rights by slamming his head into a booking desk during post-arrest processing at the police station. We therefore adopt the facts as established by the tapes, while drawing all inferences in the light most favorable to Khother, the non-moving party. *See Scott*, 550 U.S. at 381; *Johnson*, 515 U.S. at 319; *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868–69 (6th Cir. 2011) (extending *Scott* to audiotape evidence).

DeEulis and Lawson arrested Khother on suspicion of drunk driving early in the morning on November 24, 2007. Khother alleges that during the stop, DeEulis called him a "fucking Arab," and

that both officers were "belligerent, abusive, and malicious."  The dashcam video recorded DeEulis and Lawson conducting themselves calmly and professionally throughout the stop, never acting belligerently toward Khother.  Though the dashcam video cannot dispel the officers' alleged use of racial slurs outside the police cruiser, the clarified in-car audio recording of Khother's ride to the police station blatantly contradicts his allegations of slurs and abusive conduct during the ride.  Throughout the six-minute ride, Khother repeatedly pleaded for his release.  Within thirty seconds, Khother invoked his second cousin's employment as a West Bloomfield police officer in asking DeEulis to let him go.  (R. 20-1, Ex. 13 at 0:27–0:29 ("If you won't do it for me, do it for him.").)  Khother then explained that this arrest is his "second DUI" and his "father will die" if he learns of it, begging DeEulis to "do me a favor, man, you have to."  Despite Khother's entreaties, DeEulis remained professional and engaged in no abusive or belligerent conduct.

The police station video shows that almost immediately after DeEulis uncuffed Khother in the booking room, Khother began pointing and gesturing at DeEulis.  After working for a few minutes on a department computer in a corner of the booking room, DeEulis turned to address Khother, who became progressively animated and eventually popped up—unrestrained—from his bench. DeEulis gestured for Khother to sit, but Khother complied only after DeEulis stepped toward him.  For the next forty seconds, Khother continued pointing and gesturing at DeEulis from his seat, sticking his finger in DeEulis's face.  After Khother disregarded DeEulis's second order to sit, DeEulis stepped toward Khother, placed his hand on Khother's shoulder, and pressed him back onto

the seat. Undeterred, Khother continued motioning toward DeEulis from his chair, but DeEulis calmly returned to the corner to continue his computer work.

Two minutes later, DeEulis turned from the computer and Khother stood, shaking his finger in DeEulis's face yet again. DeEulis approached Khother and placed his right hand on Khother's shoulder to reseat him, but Khother resisted. Using both hands, Khother clutched DeEulis's right forearm in an attempt to push DeEulis back and knock his arm away. DeEulis, however, maintained control of Khother and pushed him back into his seat. This footage blatantly contradicts Khother's testimony that he never pointed at DeEulis.

Khother remained combative even after DeEulis's second attempt to subdue him. He pointed and gesticulated at DeEulis for the next two minutes, briefly pausing only for a moment when Lawson entered the room. Although Lawson also tried to calm him, Khother—unrelenting—continued pointing toward DeEulis. Several minutes later, Khother rose from his chair for a third time and stepped toward Lawson, prompting Lawson to step back. Over the next minute, Lawson warned Khother to calm down while removing the taser from his belt. More than a minute passed before Khother returned to his seat.

Moments later, Khother again stood up just long enough to gesture menacingly toward Lawson. After he quickly sat, Lawson motioned for Khother to rise and move toward the holding cell down the hall. Yet now, Khother refused to budge. He stayed seated, growing agitated. Lawson again motioned for Khother to rise and head toward the holding cell. When Khother refused and

remained seated, Lawson approached from Khother's left-hand side. Lawson, and only Lawson, secures Khother's left arm while moving him forward. Khother fell forward, landing just out of the security camera's frame. The officers then stood Khother back up, lifting him from under his shoulders, and returned him to his chair.

During the fall, Khother suffered a one-inch laceration on his left eyebrow. Lawson instructed Cadet Tournaud to alert dispatch so that they could request an ambulance to tend to Khother's cut. Lawson also notified dispatch to save that night's police station video. After Lawson gave Khother paper towels to apply to the cut, Khother stood up. Standing within feet of Lawson, Khother jabbed toward the officer's head with his left arm, prompting Lawson to retreat and brandish his taser before instructing Khother to sit down. The video clearly shows Lawson repeatedly mouthing the words "sit down." After Khother defied the officers' commands, both Lawson and DeEulis grabbed him and removed him from the booking room.

The officers led Khother to his holding cell. As they placed him in the cell, Khother spun around and attempted to rush past them back out of the cell. The officers pushed him back into the cell and shut the door. Khother paced the cell until DeEulis returned with a camera. DeEulis tried for nearly two minutes to get a picture of Khother's injury, but Khother hid his cut from the camera. Just before the paramedics arrived, a team of officers escorted Khother from his holding cell. Once outside the cell, Khother remained defiant, still resisting and pointing at the officers. The paramedics arrived soon after, leading Khother away on a stretcher to the hospital.

When Khother fell forward from his chair and suffered his cut, he fell into the space immediately in front of where he had been seated. In his complaint, Khother alleged that "[w]hile Plaintiff was handcuffed at the West Bloomfield Township Police Department, Defendants grabbed Plaintiff by both arms and slammed his head into a booking desk." The video evidence, however, establishes that one officer, Lawson, removed Khother from his chair. DeEulis played no role in causing Khother's fall. Moreover, the video reveals the absence of the booking desk that Khother claims the officers slammed his head on. When Lawson and DeEulis led Khother from the booking room, they crossed over the precise spot where Khother fell out of the chair without needing to navigate around a desk-sized piece of furniture. And when the officers returned to the booking room, the video recorded another unidentified person walking through the space where Khother fell without striking a booking desk. Additionally, roughly ten seconds later, the camera recorded a door sweeping across the area where Khother fell. Again, no booking desk. Finally, the video shows Officer DeEulis bend over and crouch in the area where Khother fell. Although the video did not capture exactly how Khother sustained the laceration, it blatantly contradicts Khother's testimony that both defendants "slammed" his head against a booking desk.

In a three-page order, the district court denied the officers' motion for summary judgment on Khother's excessive-force claim, holding that genuine issues of material fact remained because the infliction of Khother's cut is not visible on the station house video. According to the court, such an injury would violate an arrestee's clearly established constitutional right to be free from gratuitous

injury during custody.  The district court also denied summary judgement on Khother's malicious

prosecution claim.  The officers timely appeal.

II.

Qualified immunity shields "government officials performing discretionary functions . . .

from civil damages liability as long as their actions could reasonably have been thought consistent

with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

"Because qualified immunity is an immunity from suit rather than a mere defense to liability . . . it

is effectively lost if a case is erroneously permitted to go to trial."  *Pearson v. Callahan*, 555 U.S.

223, 231 (2009) (citation and internal quotation marks omitted).  Therefore, the collateral order

doctrine renders an order denying qualified immunity to a public official immediately appealable

when the issue appealed concerns whether certain facts showed a violation of clearly established law.

*See Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008).

Two questions guide qualified-immunity decisions.  *Pearson v. Callahan*, 555 U.S. 223, 236

(2009).  First, did the officer's conduct violate the plaintiff's constitutional right?  *Saucier v. Katz*,

533 U.S. 194, 201 (2001).  Second, was that right clearly established at the time of the incident?

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  "Qualified immunity will often operate 'to protect

officers from the sometimes hazy border between excessive and acceptable force.'"  *Solomon v.*

*Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) (quoting *Saucier*, 553 U.S. at 206)

(internal quotation marks omitted).  An officer receives qualified immunity even "if he made an

objectively reasonable mistake as to the amount of force that was necessary under the circumstances with which he was faced." *Id.* at 175.

A. Excessive Force

We analyze claims of excessive force under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). This standard encompasses "a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). The question of reasonableness in an excessive force case is objective, asking "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. This reasonableness inquiry "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. To evaluate reasonableness, we consider the circumstances of each case, including the severity of the crime, whether the suspect poses an immediate threat to the officers or others, and whether he is actively resisting arrest or attempting to flee. *Id.* at 396.

1) Officer DeEulis

Khother alleges that while "handcuffed at the West Bloomfield Township Police Department, Defendants grabbed Plaintiff by both arms and slammed his head into the booking desk." The stationhouse video, however, establishes that DeEulis never touched Khother during the fall in the booking room. Lawson, not DeEulis, attempted to secure Khother and move him toward the holding cell; DeEulis merely helped lift Khother after the fall. DeEulis did not engage in the alleged constitutional violation, and therefore qualified immunity shields him from Khother's excessive-force claim.

### 2) Lieutenant Lawson

Qualified immunity also applies to Lieutenant Lawson because his actions did not violate Khother's Fourth-Amendment rights. It was Khother—unruly, intoxicated, and unrestrained—who repeatedly defied and menaced the officers. He disobeyed instructions to remain seated throughout the booking process, and after approximately ten minutes of combative behavior, Lawson reasonably attempted to move Khother to a holding cell. The video establishes that Khother fell forward into a vacant area, debunking his claim that the officers "slammed" his head against a booking desk. Although Khother argues that Lawson used excessive force because Khother sat "neutralized" in the booking room, the cases he cites fail to demonstrate that Lawson acted unreasonably. In *McDowell v. Rogers*, this circuit reversed a directed verdict, concluding that the jury should have decided the excessive force issue because the handcuffed plaintiff offered no resistance when an officer struck him with a nightstick and broke a rib. 863 F.2d 1302, 1303 (6th Cir. 1988). In *Phelps v. Coy*, the

plaintiff, also handcuffed, was tackled to the ground during booking despite complying with an officer's instruction. 286 F.3d 295, 297 (6th Cir. 2002). Once on the floor, the officer allegedly hit the plaintiff in the face twice, grabbed his shirt, and banged his head into the floor at least three times. *Id.* Importantly, there was no evidence that the plaintiff posed a threat to anyone. *Id.* And in *Solomon*, the plaintiff was complying with an officer's order when another officer attempted to knock her to the ground, both officers shoved her into a display case, and one officer twisted plaintiff's arm with enough force to fracture it in several places. *Solomon*, 389 F.3d at 171, 173.

Khother's unruliness distinguishes his case. An unhandcuffed Khother repeatedly menaced and disobeyed the officers. Lawson warned Khother to calm down several times before attempting to move him. Only after multiple outbursts and continuing disobedience to the officers' commands did Lawson pull Khother forward from his chair to lead him to a holding cell. The video confirms that at no point did Lawson slam Khother's head into a booking desk; rather, he reasonably responded to a disruptive detainee. Qualified immunity therefore applies. *See Marvin v. City of Taylor*, 509 F.3d 234, 237 (6th Cir. 2007) ("[T]he volatility of [plainitff's] drunken state strongly suggests that it was not objectively unreasonable for [the officer to use force] when [plaintiff] twice refused to obey the officer's command.").

B. Malicious Prosecution

Due to the officers' post-detainment issuance to Khother of a citation for obstruction of an officer, Khother pressed a malicious-prosecution claim for which the district court also denied

qualified immunity. Though the officers now contend that the district court erred in crediting the complaint as presenting that claim, we address its merits as did the officers in their district court reply brief.

Qualified immunity shields the officers from Khother's malicious-prosecution claim. Michigan Compiled Laws § 750.81d(1) states that "an individual who . . . resists, obstructs, opposes, or endangers a person who the individual knows . . . is performing his duties . . . is guilty of a felony." The law defines "obstruct" to include the "use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." *Id.* § 750.81d(7)(a). Here, the stationhouse video demonstrates that probable cause supported Khother's obstruction charge because he repeatedly failed to comply with the officers during his booking, going so far as to jab at Lawson during one outburst. Because a malicious-prosecution claim "fails when there was probable cause to prosecute," *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007), and the officers had probable cause to charge obstruction, qualified immunity shields DeEulis and Lawson.

III.

We REVERSE and REMAND.