SMITH, Chief Judge, dissenting.
 

 I respectfully dissent. The court rightfully concludes that in May 2014, case law did not clearly establish "that a deputy was forbidden to use a takedown maneuver to arrest a suspect who ignored the deputy's instruction to 'get back here' and continued to walk away from the officer."
 
 Supra
 
 p. 1085. But, "in an obvious case," the clearly-established prong can be met "even without a body of relevant case law."
 
 Brosseau v. Haugen
 
 ,
 
 543 U.S. 194
 
 , 199,
 
 125 S.Ct. 596
 
 ,
 
 160 L.Ed.2d 583
 
 (2004) (per curiam) (citing
 
 Hope
 
 ,
 
 536 U.S. at 738
 
 ,
 
 122 S.Ct. 2508
 
 ;
 
 Pace v. Capobianco
 
 ,
 
 283 F.3d 1275
 
 , 1283 (11th Cir. 2002) ). Prior case law is unnecessary where "a general constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct in question."
 
 Capps v. Olson
 
 ,
 
 780 F.3d 879
 
 , 886 (8th Cir. 2015) (quoting
 
 United States v. Lanier
 
 ,
 
 520 U.S. 259
 
 , 271,
 
 117 S.Ct. 1219
 
 ,
 
 137 L.Ed.2d 432
 
 (1997) ). This is such a case.
 

 Kelsay was a small woman standing at 5 feet tall and weighing 130 pounds dressed in a swimsuit. She acknowledged that Deputy Ernst grabbed her arm and "said to get back here."
 
 Kelsay v. Ernst
 
 , No. 4:15-CV-3077,
 
 2017 WL 5953112
 
 , at *2 (D. Neb. May 19, 2017) (citation to the record omitted). But, according to Kelsay, she walked away from the deputy to check on her daughter. She denied resisting Deputy Ernst's efforts to handcuff or arrest her. Nevertheless, Deputy Ernst "ran up behind [Kelsay] and he grabbed [her] and slammed [her] to the ground."
 

 Id.
 

 (second and third alterations in original) (citation to the record omitted). The maneuver-"like, a bear hug"-lifted Kelsay "completely off the ground."
 

 Id.
 

 (citation to the record omitted). Due to the ground impact, Kelsay briefly lost consciousness. Deputy Ernst's takedown maneuver broke Kelsay's collarbone.
 

 Kelsay's and Deputy Ernst's versions of factual events materially differ, but at this stage of the litigation, Kelsay gets the benefit of all reasonable inferences. The record did not reflect that Kelsay was a threat, physical or otherwise, to either the officers or bystanders. Deputy Ernst's bear-hug takedown could be found by a jury to be unreasonable under the circumstances. "Police officers undoubtedly have a right to use
 
 some
 
 degree of physical force, or threat thereof, to effect a lawful seizure, and reasonable applications of force may well cause pain or minor injuries with some frequency."
 
 Grider v. Bowling
 
 ,
 
 785 F.3d 1248
 
 , 1252 (8th Cir. 2015) (emphasis added) (quoting
 
 Chambers v. Pennycook
 
 ,
 
 641 F.3d 898
 
 , 907 (8th Cir. 2011) ). But it should be obvious that a blind body slam of a comparatively slightly built and nonviolent misdemeanant unreasonably increased the probability of injury. The amount of force applied was unreasonable and was more than what was reasonably necessary to effectuate an arrest under the circumstances.
 

 The Court relies on
 
 Ehlers
 
 , but
 
 Ehlers
 
 is distinguishable. In
 
 Ehlers
 
 , we concluded that
 

 [a] reasonable officer in Hansen's position would at least consider the possibility that Ehlers could produce a weapon or otherwise attack him, especially given that Ehlers had directly disobeyed unequivocal orders, was in close proximity to Hansen, and continued to approach Hansen while he was arresting Ehlers's son. In order to continue to place Derrik in the patrol car, Hansen would have had to turn his back to Ehlers and leave himself vulnerable to this risk. Thus, it is not unreasonable that Hansen would interpret Ehlers's physical presence,
 close proximity, and refusal to comply as threatening and preventing him from completing the task at hand.
 

 846 F.3d at 1009
 
 . In contrast to
 
 Ehlers
 
 , Kelsay did not have a weapon or access to one; she was walking
 
 away
 
 from Deputy Ernst; she disobeyed Deputy Ernst's order once; and Deputy Ernst did not have to place himself in a vulnerable position. Moreover, in contrast to the officer in
 
 Ehlers
 
 , Deputy Ernst gave Kelsay
 
 no
 
 warning
 
 [2]
 
 after she turned her back and walked away from him. Deputy Ernst simply tackled her from behind. The officers in
 
 Ehlers
 
 reasonably interpreted the arrestee's "physical presence, close proximity, and refusal to comply as threatening."
 

 Id.
 

 at 1009
 
 . No facts in the instant case support a reasonable belief that Kelsay's actions were threatening.
 

 Given the facts, a reasonable officer on the scene would have known that a full-body takedown of a small and nonviolent misdemeanant was excessive under the circumstances. Deputy Ernst was entitled to use the force necessary to effect an arrest. However, a jury might decide that Deputy Ernst used substantially more force than necessary.
 
 See
 

 Small v. McCrystal
 
 ,
 
 708 F.3d 997
 
 , 1005 (8th Cir. 2013) ("It was unreasonable for [an officer] to use more than de minimis force against [the arrestee] by running and tackling him from behind without warning." (citing
 
 Shannon
 
 ,
 
 616 F.3d at
 
 863 ;
 
 Bauer v. Norris
 
 ,
 
 713 F.2d 408
 
 , 412-13 (8th Cir. 1983) ) );
 
 see also
 

 Morelli v. Webster
 
 ,
 
 552 F.3d 12
 
 , 24 (1st Cir. 2009) ("Here, the facts, seen through the prism of the plaintiff's account, simply do not justify yanking the arm of an unarmed and non-violent person, suspected only of the theft of $20, and pinning her against a wall for three to four minutes with sufficient force to tear her rotator cuff. That is particularly so in view of the marked disparity in height and weight between the officer and the suspect, the absence of any evidence of either dangerousness or attempted flight, and the presence of a cadre of other officers at the scene. In short, the plaintiff's version of the relevant facts places Webster's actions outside the universe of protected mistakes." (citations omitted) );
 
 Solomon v. Auburn Hills Police Dep't
 
 ,
 
 389 F.3d 167
 
 , 175 (6th Cir. 2004) ("[T]he officers here were not faced with a tense and uncertain situation where they feared for their safety and the safety of bystanders. ... Officer Miller then shoved [the arrestee] into the [theater] display case, putting his entire weight-nearly twice the amount of her own weight-against her. Finally, without directing Solomon to act, he yanked her arm behind her with such force that it fractured. Officer Miller's actions, in total, were excessive and resulted in Solomon suffering from bruising and a fractured arm.").
 

 Officer Ernst did not need to be put on notice by a prior case with the instant facts to know that his conduct could be challenged as unreasonable.
 

 For these reasons, I respectfully dissent.
 

 Deputy Ernst told Kelsay to "get back here,"
 
 Kelsay
 
 ,
 
 2017 WL 5953112
 
 , at *2, but that order occurred before Kelsay turned her back to the deputy and continued walking away.